IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2022

## MANDON ROGERS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 16-03214      Lee V. Coffee, Judge
_____

### No. W2022-00019-CCA-R3-PC
_____

The petitioner, Mandon Rogers, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel. Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR. and TOM GREENHOLTZ, JJ., joined.

Shae Atkinson, Memphis, Tennessee, for the appellant, Mandon Rogers.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

The petitioner was convicted by a Shelby County Criminal Court jury of attempted first degree murder resulting in serious bodily injury, employing a firearm during the commission of a dangerous felony, and possession of a firearm by a convicted felon. *State v. Mandon Rogers*, No. W2018-01599-CCA-R3-CD, 2019 WL 1502298, at *1 (Tenn. Crim. App. Apr. 4, 2019), *perm. app. denied* (Tenn. July 25, 2019). As a result of his convictions, the trial court sentenced the petitioner to an effective term of fifty-five years in the Department of Correction. *Id.* This Court affirmed the petitioner's convictions on direct appeal, and the Tennessee Supreme Court denied his application for permission to appeal. *Id.*

This Court succinctly summarized the underlying facts of the case on direct appeal as follows:

> [The petitioner] and Tarkie Brown had known each other for over twenty years. According to Mr. Brown, they lived across the street from each other, were friends, and "hung out all the time." On September 27, 2014, the two men attended a party. They were intoxicated when they returned to Mr. Brown's house. Mr. Brown told [the petitioner] to leave because he wanted to go to bed. As [the petitioner] was leaving, he punched Mr. Brown in the jaw and ran. Mr. Brown pursued [the petitioner] but could not catch him. He "tricked" [the petitioner] by telling him that everything was okay, and when [the petitioner] came back to the house, Mr. Brown punched [the petitioner] in the face, knocking him to the ground.

> The next day, [the petitioner] packed an overnight bag and told his landlord that he was waiting for his cousins to pick him up to go to a football game. He waited on the porch from approximately five p.m. until Mr. Brown returned home from work around seven p.m. When Mr. Brown saw [the petitioner] walking towards his house from across the street, he thought [the petitioner] was coming to apologize. [The petitioner] walked up to Mr. Brown and said, "You know you should have killed me." [The petitioner] then pulled a bag from behind his back that concealed a revolver and fired at Mr. Brown. The first shot missed, but [the petitioner] fired two more times, and the third shot hit Mr. Brown in the leg. Mr. Brown fell to the ground but got up and tried to run. [The petitioner] fired two more shots, and one round struck Mr. Brown in the hip. Mr. Brown fell again and yelled, "Don't kill me." A female neighbor yelled, "Mandon, no," and [the petitioner] fled. When the police arrived, Mr. Brown was lying on a driveway with a towel covering the wound to his leg. He was transported to the hospital in critical condition. Mr. Brown had two surgeries and remained hospitalized for a week. The second round that hit Mr. Brown chipped or shattered his pelvis. After undergoing months of physical therapy, Mr. Brown was left with a permanent limp. Mr. Brown was unable to work for approximately one month.

> [The petitioner] turned himself in to the police. He told the investigator that Mr. Brown had beaten him up and that the incident "weighed on him." He said he walked up to Mr. Brown and shot him. The parties stipulated that [the petitioner] had been previously convicted of two felonies involving the use of violence. [The petitioner] presented no other proof. . . .

*Id.* at *1-*2.

The petitioner subsequently filed a pro se petition for post-conviction relief. Though counsel was appointed, no amended petition was filed. The petitioner raised numerous issues in his petition, including the eight claims of ineffective assistance of counsel maintained on appeal. He asserted counsel rendered ineffective assistance by failing to: (1) challenge his indictment as void because the foreperson of the grand jury served beyond a second term without sitting out a twenty-four month period before the additional term; (2) seek dismissal of the superseding indictment on grounds it was brought as a result of vindictiveness by the State; (3) seek suppression of the petitioner's statement to members of law enforcement; (4) challenge statements made by the State during closing argument regarding serious bodily injury; (5) challenge the trial court's instructing the jury that serious bodily injury was an essential element of attempted first degree murder; (6) request a jury instruction on aggravated assault as a lesser-included offense; (7) challenge the trial court's imposition of Range II and III sentences because the State failed to file a notice of intent to seek enhanced punishment; and (8) challenge the trial court's imposition of a mandatory enhanced sentence on his conviction for employing a firearm during the commission of a dangerous felony because he had no qualifying prior dangerous felony convictions.

The post-conviction court conducted an evidentiary hearing at which Ann Schiller, a former assistant district attorney who handled the case against the petitioner, testified that the petitioner was originally indicted by another prosecutor on the charge of aggravated assault. When she took over the case, she made the petitioner an offer of fifteen years. However, she believed the case had been undercharged and made it clear that if the petitioner rejected the offer, she planned to seek a superseding indictment for attempted first degree murder resulting in serious bodily injury. Ms. Schiller believed the facts of the case and evidence of the petitioner's intent to kill supported the more serious offense. She elaborated that the petitioner gave an oral statement to police "indicating that due to the beating at the hands of the victim, that [the petitioner] had basically went and got a gun, lye [sic] in wait -- waited on the victim to get home, walked over and shot him." She also noted there was a witness who observed the petitioner waiting for a period of hours for the victim to get home "[a]nd then as soon as the victim got home, [the petitioner] walked over . . . across the street, and then shot him."

Ms. Schiller recalled that the trial court conducted a colloquy regarding the plea offer and the petitioner's rejection of it and that she made it clear during the colloquy she intended to seek a superseding indictment on "the true charges." She believed there was sufficient proof of serious bodily injury "given the situation that the victim was in, he was

shot multiple times in the abdomen area; . . . one bullet shattered his pelvis. . . . [H]e has a . . . permanent limp. I don't think they could get all the bullets out."

The post-conviction court noted on the record that the aggravated assault case "had been in court for awhile" before the superseding indictment was brought. The court also affirmed through questions to Ms. Schiller that the petitioner was informed the case would be reindicted if he rejected the plea offer. The petitioner told the trial court he understood the ramifications if he chose to reject the offer.

The petitioner testified next regarding each of his claims. First, the petitioner complained the foreperson of the grand jury, who signed the superseding indictment, had served on the grand jury longer than the statutory limit without sitting out the required twenty-four-month period. The post-conviction court advised the petitioner that the Supreme Court had addressed the issue and held that members of the grand jury could be "reappointed every two years by the [j]udges until we decide to appoint somebody differently."

The petitioner next contended he was only offered the fifteen-year "deal" on aggravated assault one time. He asserted that he only shot the victim twice, once in the leg and once in the hip, and that the victim was back to work five months after the shooting. He averred the victim's only lasting injuries were a "little amount of scar" and a chipped pelvis bone and, although the victim testified he might have a limp," he did not have one due to "exercise and . . . rehabilitation." The petitioner opined that the victim's injuries did not constitute serious bodily injury as alleged in the superseding indictment. The petitioner, again noting the victim was back to work five months later, did not see "what new evidence . . . justified [the State] bringing on a new superseding indictment charging [him] with . . . more severe punishment and charges, when the victim was shot below the waist, aggravated assault." Therefore, the petitioner asserted that the State vindictively brought the superseding indictment due to his refusal to accept the plea offer and that counsel was ineffective for failing to seek dismissal of the indictment on that basis.

The petitioner next asserted that his statement to police should have been suppressed. According to the petitioner, he called a member of law enforcement he knew to turn himself in and, during the drive to the police station, told the transporting officer what had happened in the course of "a casual conversation." He said he never gave a statement to Lieutenant Fierson because he refused to do so without a lawyer present. He claimed, therefore, the State never proved he waived his *Miranda* rights prior to giving a statement to Lieutenant Fierson and counsel should have sought exclusion of the statement.

Next, the petitioner claimed counsel was ineffective in failing to challenge the State's closing argument. According to the petitioner, the State misstated the victim's

injuries and incorrectly argued serious bodily injury was an element of the offense, which the petitioner disputed. He averred that "being in pain does not equate to extreme physical pain[.]"

The petitioner also asserted counsel should have objected to the jury's being charged that serious bodily injury was an essential element of attempted first degree murder. He claimed the erroneous jury instruction allowed the jury to convict him of "attempted first-degree murder serious bodily injury to the exclusion of attempted first-degree murder without the inclusion of serious bodily injury."

The petitioner further asserted counsel should have requested an instruction on aggravated assault as a lesser-included offense. Given the victim's injuries and the original indictment against him, the petitioner claimed there was a reasonable probability the jury would have convicted him of aggravated assault.

The petitioner also raised two issues relating to his sentencing. First, he alleged the State never filed a notice of intent to seek enhanced punishment, yet the trial court imposed Range II and III sentences. He acknowledged a notice of enhancement factors was filed but pointed out that it differed from the notice for enhanced punishment. However, he did not dispute that he qualified for Range II or III sentences. Second, the petitioner averred the trial court's imposition of a fifteen-year sentence at 100% for employing a firearm during the commission of a dangerous felony was erroneous because "there was no qualifying dangerous felony. I've never been convicted of a dangerous felony." He asserted counsel erred by "stipulating me to such an enhanced mandatory sentencing."

On cross-examination, the petitioner appeared to understand the State's explanation that attempted first degree murder could be charged with or without serious bodily injury and how it was charged affected the possible sentence that could be imposed. The State explained that charging with serious bodily injury "adds an extra element, an extra burden on the State, that the State has to prove beyond a reasonable doubt." The petitioner, nonetheless, disputed that the victim suffered serious bodily injury, claiming the only proof of the victim's chipped pelvis bone was the victim's testimony and the victim's scarring was caused by medical treatment. He also indicated the victim's having to go through extensive physical therapy to learn to walk correctly again was of no consequence because "[h]e wasn't never paralyzed" and "[h]e didn't have a permanent limp." However, the petitioner understood the State's recitation of the victim's injuries and recovery process as the basis for its allegation of serious bodily injury.

The petitioner acknowledged the jury was charged on other lesser-included offenses that would have come before aggravated assault in the hierarchy of lesser-included offenses. The petitioner also did not dispute there was a document in the record titled

- 5 -

notice of enhancement factors that stated his range of punishment to be a multiple and career offender. The petitioner also recalled the trial court reviewing his prior convictions and determining those convictions were sufficient to establish the range alleged by the State.

The petitioner admitted to making an oral statement to the officer who transported him to the police station, but he denied making a statement to Lieutenant Fierson. He said he asked trial counsel to file a motion to suppress his statement; however, counsel told him the State did not intend to use the statement. The petitioner said he filed a complaint with the Board of Professional Responsibility because of counsel's decision not to request a suppression hearing.

Upon questioning by the post-conviction court, the petitioner did not remember receiving a copy of the jury charge. The petitioner also acknowledged that he was unaware attempted first degree murder could be charged two ways, one with and one without causing serious bodily injury. The petitioner conceded he had been advised he could be sentenced as a Range II or III offender but claimed he did not receive written notice as required.

The petitioner's trial counsel testified that she had worked as an assistant public defender for more than twenty-six years and tried over one hundred cases, the majority being serious felony cases. Counsel did not recall the petitioner ever raising an issue regarding the tenure of the grand jury foreperson nor did she recall that issue ever coming up in any other matter she had handled.

Concerning the superseding indictment, counsel did not view the action as vindictive, stating the State "held that offer open for quite some time. It was not a one-day-only deal where he had to plead that day or it was going to go away." Rather, the petitioner was aware if he did not take the offer the State planned to seek a superseding indictment. Counsel explained to the petitioner that he was facing more prison time if the State reindicted him and was successful at trial. She agreed the State's offer did not require the petitioner to plead out of range. Even so, the petitioner rejected the plea, saying "it was too much time." Counsel did not challenge the superseding indictment because the facts, as they were, could have been viewed as attempted first degree murder from the beginning. As such, she believed she had no legal basis to challenge the superseding indictment.

Counsel did not recall ever telling the petitioner the State was not going to use his statement. She remembered the petitioner reached out to a police officer he knew for assistance in turning himself in when he found out the police were looking for him and, during the process, told officers his version of what had happened. She also remembered Lieutenant Fierson indicating the petitioner made a statement before they had an

opportunity to advise him of his rights. The petitioner was aware of his oral statement, and he never claimed he had invoked his right to remain silent. In any event, the petitioner maintained to counsel that he did not commit the shooting, claiming he was only outside waiting for a ride. Counsel did not recall the petitioner filing a complaint against her with the Board of Professional Responsibility for failing to file a motion to suppress, noting she has not had to respond to the Board on a complaint in twenty years.

When asked why she did not challenge the inclusion of serious bodily injury in the State's closing argument, counsel explained "[b]ecause it was an extra burden on the State. Why would I want to object to something that makes the State have to work harder and prove more[,]" especially when the victim did not appear to have a limp. Counsel did not challenge the inclusion of the element in the jury charge based on advice from the appellate division of her office and her understanding of the statute. However, she did challenge proof of serious bodily injury through her cross-examination of the victim but admitted she saw no deficiency in the State's proof of this element. Counsel did not recall the petitioner ever bringing up an issue regarding serious bodily injury and, if he had, she would have reviewed the attempted murder statute with him.

Counsel stated she did not seek a charge for the lesser-included offense of aggravated assault because it was not a lesser-included offense of the charged offense. With regard to the petitioner's sentencing range, counsel recalled the petitioner's prior convictions were sufficient to establish Range II and III.

Following the conclusion of the proof, the post-conviction court made extensive oral findings, as well as issued a subsequent written order, denying the petition. The petitioner filed a timely appeal.

*Analysis*

On appeal, the petitioner challenges the post-conviction court's failure to find trial counsel was ineffective. The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is de novo, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction

allegations de novo, affording a presumption of correctness only to the post-conviction court's findings of fact. *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

## I. Grand Jury Foreperson

The petitioner asserts counsel was ineffective for failing to challenge the indictment. More specifically, the petitioner claims the indictment was void because the foreperson of the grand jury was barred from serving beyond a second term without sitting out a twenty-four-month period before the additional term. As to this issue, the post-conviction court found the allegation to have "absolutely no merit." The court noted "[o]ur [a]ppellate [c]ourts have consistently held that a grand jury foreperson may serve longer than the requisite two-year term." Upon our review, we affirm the judgment of the post-conviction court.

The record reflects that the grand jury foreperson was consistently reappointed to two-year terms as foreperson from June 8, 2004 to November 1, 2018. Tennessee Rule of Criminal Procedure 6(g)(3) states that a grand jury foreperson "shall hold office and exercise powers for a term of two (2) years from appointment" and that "[i]n the discretion of the presiding judge, the foreperson may be removed, relieved, or excused from office for good cause at any time." However, this Court has held that a grand jury foreperson may serve on successive grand juries and is not limited to one term. *See Nelson v. State*, 499 S.W.2d 956, 956 (Tenn. Crim. App. 1972) (finding "no authority holding and [we] can think of no valid reason why a grand jury foreman appointed for two years . . . is disqualified to serve longer either by reappointment or holding over"); *Joseph B. Thompson v. State*, No. E2004-00920-CCA-R3-PC, 2005 WL 2546913, *25 (Tenn. Crim. App. 2005) (citing *Nelson* for proposition grand jury foreperson may serve longer than the statutory term of two years), *perm. app. denied* (Tenn. Jan. 30, 2006); *State v. Antonio Crenshaw*, No. W2014-01367-CCA-R3-CD, 2015 WL 2447717, at *14 (Tenn. Crim. App. May 22, 2015) (citing authority for position "this [C]ourt has consistently held that a grand jury foreperson may serve on successive grand juries"), *perm. app. denied* (Tenn. Sept. 18, 2015). Accordingly, counsel was not ineffective in failing to raise this issue, and the petitioner is not entitled to relief.

## II. Superseding Indictment

The petitioner next asserts counsel rendered ineffective assistance by failing to seek dismissal of the superseding indictment on grounds it was brought as a result of vindictiveness by the State. As to this issue, the post-conviction court found the petitioner was "the architect of this dilemma" in that he rejected an offer of fifteen years as a career offender after being apprised several times the State would file a superseding indictment because the prosecutor believed the case had initially been undercharged. The petitioner was given months to contemplate the guilty plea, and the State filed the superseding indictment only after the petitioner rejected counsel's advice to accept the plea. The court observed "[b]oth trial attorneys testified that the case had been severely under charged

based on a proper investigation and discovery of all the evidence in this case." The court, therefore, held that "[t]here were no legal reasons for trial counsel to object to a superseding indictment," and "[t]he [p]etitioner has wholly failed to prove prejudice by trial counsel." Again, we agree with the determination of the post-conviction court.

It is unconstitutional to punish a person for choosing to exercise his or her constitutional rights. *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969) (citing *United States v. Jackson*, 390 U.S. 570, 581 (1968), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). However, if the prosecutor had probable cause to believe the accused committed the underlying offense, the decision to prosecute the accused rests entirely within the prosecutor's discretion, subject to certain constitutional limitations. *State v. Skidmore*, 15 S.W.3d 502, 508 (Tenn. Crim. App. 1999) (citing *State v. Superior Oil, Inc.*, 875 S.W.2d 658, 660 (Tenn. 1994)).

There is simply no evidence of vindictiveness on the State's part in bringing the superseding indictment. The prosecutor who handled the case testified that she believed the case had been undercharged by the prior prosecutor and made it clear to the petitioner that if he rejected the offer, she intended to seek a superseding indictment for attempted first degree murder resulting in serious bodily injury, a charged she believed to be more appropriate given the facts of the case and evidence of the petitioner's intent to kill. Trial counsel testified she could see how the facts supported a charge for attempted first degree murder resulting in serious bodily injury and did not feel there was a legal basis to challenge the superseding indictment. We discern no deficiency in counsel's performance.

### III. Suppression of Statement

The petitioner argues counsel rendered ineffective assistance by failing to seek suppression of a statement the petitioner made to a member of law enforcement. He asserts the State failed to prove he waived his *Miranda* rights before giving a statement to Lieutenant Fierson. According to the petitioner, he never gave a statement to Lieutenant Fierson and specifically told the arresting officer he would not give a statement without a lawyer present. He surmises Lieutenant Fierson testified about what he learned from the officer who transported the petitioner to jail and not what Lieutenant Fierson personally heard from the petitioner. Therefore, counsel should have sought suppression of the petitioner's alleged statement on grounds he did not give the statement and did not sign an advice of rights form. In denying relief on this issue, the post-conviction court found the petitioner

> alleges that he was not given his *Miranda* rights on an issue that was never raised. [Counsel] indicated [the petitioner] never brought that to her attention. And that it was something that was never raised because it had no

- 10 -

merit. [The petitioner] talked to a police officer, told the police officer he didn't want to put anything in writing, was given his *Miranda* warnings. According to the testimony that's on the record at trial, gave a verbal statement, but refused to sign it. So this allegation about [counsel] should have suppressed that has absolutely no merit.

The petitioner has failed to prove any deficiency on the part of counsel. Lieutenant Fierson testified at the trial as to what the petitioner admitted to him about the shooting but said the petitioner did not want to put his statement in writing. While the petitioner claims he asked counsel to file a motion to suppress his statement and asserts he filed a complaint against her with the Board of Professional Responsibility for failing to do so, counsel testified the petitioner never indicated any issues to her that could have been addressed with a motion to suppress. She also testified that she had not had to respond to a complaint with the Board in twenty years. Counsel testified that the petitioner never indicated that his statement was not freely given or that he had invoked his right to remain silent. The post-conviction court accredited counsel's testimony. Moreover, even if counsel were in some way deficient, the bulk of the evidence against the petitioner came from the compelling testimony of the victim, which militates against a finding of prejudice. Accordingly, the petitioner has failed to meet the burden required of him and is not entitled to relief.

## IV. Serious Bodily Injury

The petitioner argues counsel rendered ineffective assistance in failing to challenge statements made by the State during its closing argument regarding serious bodily injury and failing to challenge the trial court's instructing the jury that serious bodily injury was an element of attempted first degree murder. In support of his claim, the petitioner relies on *State v. Harold Allen Vaughn*, No. W2016-00131-CCA-R3-CD, 2016 WL 7102748, at *6 (Tenn. Crim. App. Dec. 6, 2016), *appeal granted, cause remanded* (Tenn. Nov. 17, 2017), in which a panel of this Court observed "serious bodily injury is not an element of attempted first degree murder." However, that panel went on to note that consideration of serious bodily injury is applicable because "if a defendant is found guilty of attempted first degree murder 'where the victim suffers serious bodily injury as defined in § 39-11-106,' the defendant is not eligible for release until he serves 85 percent of his sentence." *Id.* (citing Tenn. Code Ann. § 40-35-501(k)(5)). Therefore, serious bodily injury, although not an element of attempted first degree murder, must be put before the jury for sentencing purposes when the charge is "attempted first degree murder resulting in serious bodily injury," as was the case here. Accordingly, counsel was not ineffective in failing to challenge statements the State made in closing argument regarding serious bodily injury or the trial court's inclusion of serious bodily injury in the jury charge. The petitioner is not entitled to relief.

## V. Aggravated Assault as Lesser-Included Offense

The petitioner argues counsel rendered ineffective assistance by failing to request a jury instruction on aggravated assault as a lesser-included offense. The petitioner insinuates that because he was originally charged with aggravated assault, the jury would have convicted him of such had it been charged. As to this issue, the post-conviction court noted that our Supreme Court has held aggravated assault is not a lesser-included offense of attempted first degree murder, and therefore, the charge did not need to be given. The court went on to find that, even if it was error not to give the charge, such error was harmless because "the jury was given other included offenses to consider and rejected them all[.]"

It is true our Supreme Court has observed aggravated assault is not a lesser-included offense of attempted first degree murder. *See Demonbreun v. Bell*, 226 S.W.3d 321, 324 (Tenn. 2007). However, there is some indication aggravated assault should be charged as a lesser-included offense if the charged offense is attempted first degree murder *resulting in serious bodily injury*. *See* Tenn. Crim. Trial Practice § 26.6 (2021-2022 ed.). Be that as it may, the petitioner has failed to show prejudice because the jury convicted him of the charged offense to the exclusion of all lesser-included offenses that would have been charged before aggravated assault in the hierarchy of lesser-included offenses. The Tennessee Supreme Court has indicated that when a jury receives a sequential instruction as well as an instruction on immediate lesser-included offenses, as was the case here, the omission of additional lesser-included offenses is harmless error. *State v. Stephen Doantae Lester*, No. E2017-02154-CCA-R3-CD, 2018 WL 6498700, at *18 (Tenn. Crim. App. Dec. 10, 2018) (citing *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998)), *perm. app. denied* (Tenn. Dec. 10, 2018). Therefore, we conclude the petitioner was not prejudiced by counsel's failure to request a jury instruction on aggravated assault as a lesser-included offense and is not entitled to relief.

## VI. Sentencing Issues

The petitioner argues counsel rendered ineffective assistance by: (1) failing to challenge the trial court's imposition of Range II and III sentences because the State failed to file a notice of intent to seek enhanced punishment and (2) failing to challenge the trial court's imposition of a mandatory enhanced sentence of fifteen years at 100% on his conviction for employing a firearm during the commission of a dangerous felony because he had no qualifying prior dangerous felony convictions.

### A. Imposition of Range II and III Sentences

With regard to the petitioner's claim concerning notice of enhanced punishment, the post-conviction court found the petitioner was informed of his range of punishment in the event of a superseding indictment during multiple conversations with the court. The court continued: "He knew that he was a Range III offender on some cases, career on other cases, possibly Range II on a Class A felony. He had actual knowledge of that because it was discussed with him." The court summarized the petitioner "received actual notice from the [p]rosecutor, his attorney and the trial court."

Tennessee Code Annotated section 40-35-202(a) states:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions. The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named in the record is the same as the defendant before the court, and is prima facie evidence of the facts set out in the record.

Tenn. Code Ann. § 40-35-202(a).

Our Supreme Court addressed the above statute in *State v. Adams*, 788 S.W.2d 557 (Tenn. 1990), and observed "[w]e have previously held that non-compliance with the rule of procedure requiring notice to be filed at least ten days before trial will not bar enhanced sentencing in the absence of prejudice." *Id.* at 758 (citing *State v. Stephenson*, 752 S.W.2d 80 (Tenn. 1988) (construing Tenn. R. Crim. P. 12.3)). "The purpose of the requirement is to provide the defendant with 'fair notice' that he is exposed to something other than standard sentencing. It is intended to facilitate plea-bargaining, to inform plea decisions, and to assist with trial strategy." *State v. Benham*, 113 S.W.3d 702, 705 (Tenn. 2003) (quoting *Adams*, 788 S.W.2d at 559). "'[W]hen the State has substantially complied with Section 40-35-202(a), an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief.'" *State v. Taylor*, 63 S.W.3d 400, 412

(Tenn. Crim. App. 2001) (quoting *Adams*, 788 S.W.2d at 559). In other words, what is required is "fair" notice, not "perfect" notice. *Id.* at 413; *Adams*, 788 S.W.2d at 559.

The record does not preponderate against the post-conviction court's findings. The record contains the transcript of a trial-setting hearing that took place almost a year before the trial in which the trial court discussed the petitioner's numerous prior convictions and how they would impact his offender range in the event of conviction on a superseding indictment. The court used the discussion as an opportunity to reaffirm the petitioner's intent to decline the State's offer, after being fully advised of the potential punishment he faced on each charge. Moreover, at the post-conviction hearing, when asked, the petitioner acknowledged recalling a hearing where the trial court reviewed his prior convictions and determined those convictions were sufficient to establish the range alleged by the State. Upon further questioning by the post-conviction court, the petitioner conceded he had been notified he could be sentenced as a Range II or III offender but legalistically claimed he did not receive the required written notice. Counsel testified she reviewed the petitioner's prior felony convictions and verified those convictions qualified him for Range II and III sentences. In addition, we note that the original plea offer was for a Range III sentence, of which presumably the petitioner was aware. The record also contains a document filed by the State prior to sentencing titled "notice of enhancement factors," which specified the petitioner was in Range II and IV for the various offenses. Despite the absence of a document specifically titled "notice of intent to seek enhanced punishment" in the record, the proof clearly establishes that the petitioner was on notice that he would be exposed to greater than standard sentencing. Therefore, we conclude the petitioner was not prejudiced by the State's alleged lack of filing the specific notice and is not entitled to relief.

## B. *Employment of a Firearm Conviction*

As to the petitioner's second sentencing-related claim, the petitioner misapprehends the offense of employing a firearm during the commission of a dangerous felony. Tennessee Code Annotated section 39-17-1324 provides: "It is an offense to employ a firearm . . . during the . . . [c]ommission of a dangerous felony . . . [or] [a]ttempt to commit a dangerous felony." *Id.* at § 39-17-1324(b)(1), (2). The statute then specifies the offenses qualifying as "dangerous felonies," one of which is "[a]ttempt to commit first degree murder, as defined in §§ 39-12-101 and 39-13-202[.]" *Id.* § 39-17-1324(i)(1)(A). It is of no consequence the petitioner "had never been convicted of a dangerous felony." The charge was predicated on the attempted murder charge at hand. Moreover, because the petitioner was a Range III offender for this Class C felony offense, the petitioner was lawfully sentenced to a within-range sentence of 15 years, even if he had not been previously convicted of a dangerous offense. As such, counsel cannot be deemed ineffective for failing to challenge this conviction or the sentence. Again, the petitioner has not met his burden and is not entitled to relief.

- 14 -

*Conclusion*

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE